LittletoN, Judge,
delivered the opinion of the court:
Plaintiffs, who are trustees of Lee Wilson and Company, a common law business trust which operates a large cotton plantation in Arkansas, brought this suit to recover $77,613.46 as a payment due the Lee Wilson and Company Trust on accounts of plaintiffs’ claimed compliance, on their lands, with the 1938 Agricultural Conservation Program of the Department of Agriculture under the Soil Conservation and Domestic Allotment Act (49 Stat. 1148, Tit. 16, U. S. C., sec. 590g to 590q). No question is now involved as to the merits of plaintiffs’ claim. Defendant has filed a plea of set-off in a total amount of $74,435.38, which represents a portion of the amount previously paid by defendant to plaintiffs for alleged compliance with the Agricultural Adjustment and Agricultural Conservation Program of the Government during the years 1933 through 1936. The plea of set-off alleges that plaintiffs wrongfully and in violation of their agreements withheld from their tenants and sharecroppers their proportionate parts of Government payments and also that cer *715 tain of such, payments were made to plaintiffs under mistakes as to the extent of plaintiffs’ compliance with these programs, induced, in some instances, by plaintiffs’ false representations.
Defendant’s plea of set-off of $74,485.88 against the amount of $77,613.46 sued for by plaintiffs involves seven items as follows:
1933 Cotton adjustment program: Improperly withheld from tenants_$23, 009. 69
1934 Cotton acreage reduction program: Overpayments to plaintiffs_ 11,262.19 Improperly withheld from tenants_ 542.67
1935 Cotton acreage adjustment plan: Overpayments to plaintiffs_ 12, 715.32 Improperly withheld from tenants_ 5,932.93
1936 Agricultural Conservation Program: Overpayments to plaintiffs_ 19,014.19 Improperly paid plaintiffs instead of their tenants- 1, 958.39
Total_ 74,435. 38
The facts alleged in the plea of set-off are substantially as follows:
I
1933 COTTON ADJUSTMENT PROGRAM
($23,009.69 improperly withheld from tenants of plaintiffs)
1. Under the Agricultural Adjustment Act, approved May 12, 1933 (48 Stat. 31; Tit. 7, U. S. C., sec. 601, el seq.), defendant, acting through the Agricultural Adjustment Administration, promulgated a program for the voluntary reduction of acreage planted to cotton during 1933 for the purpose of reestablishing the purchasing power of farm commodities through adjustment of the supply of cotton to consumptive requirements. Pursuant to this act plaintiffs entered into a contract with the defendant, consisting of an offer by plaintiffs on July 1, 1933, entitled “Offer to Enter into Cotton Option-Benefit or Benefit Contracts,” No. 2000, which was accepted by defendant by delivering a written notice of acceptance to plaintiffs. Under the terms of the contract plaintiffs agreed to take out of production 7,000 of the 21,000 acres planted to cotton on their land; in consideration of a cash payment of $84,000 plus an option to *716 purchase from the Secretary of Agriculture 4,200 bales of cotton at 6 cents per pound, basis middling % inch staple cotton as quoted on the New York Cotton Exchange. By its terms the contract was subject to such regulations as were then or might be thereafter prescribed or authorized by the Secretary of Agriculture pertaining thereto.
2. The contract was also subject to Cotton Eegulations, Series 1, promulgated by the Secretary of Agriculture and approved by the President July 25, 1938, under the provisions of which plaintiffs were obligated to have the contract signed by all persons who had an interest in the cotton crop then being grown on plaintiffs’ lands and covered by the contract. Although there was a large number of persons who had an interest in this cotton crop as tenants or sharecroppers of plaintiffs, plaintiffs executed and submitted to defendant the contract without naming therein or obtaining the signature thereon of any of said tenants and sharecroppers.
3. Pursuant to the act of 1933 the following persons, who were share tenants of plaintiffs, entered into contracts with defendant, consisting of several offers by such persons, each entitled “Offer to Enter into Cotton Option-Benefit or Benefit Contracts” bearing the following respective dates and numbers, each of which was accepted by defendant by delivering a written notice of acceptance to the respective offerer:

Under the terms of each of these contracts the tenants of plaintiffs executing them agreed to take out of production a stated number of acres planted to cotton on land owned by plaintiffs in consideration of a stated cash payment. *717 Each contract was, by its terms, subject to such regulations as were then or might be thereafter prescribed or authorized by the Secretary of Agriculture pertaining thereto.
4. Each contract was also subject to the provisions of Cotton Eegulations, Series 1, under which the tenants of plaintiffs executing the contracts were obligated to have them signed by all persons who had an interest in the cotton crops then being grown on plaintiffs’ lands covered by such contracts. In each contract plaintiffs were designated as having a lien on the cotton crop covered thereby.
5. Under the provisions of the contracts referred to in findings 1 and 3, above, and Cotton Eegulations, Series 1, the sums payable by defendant under the contracts were required to be divided by plaintiffs between themselves and their tenants and sharecroppers in the same proportions as the ratios of the interests of plaintiffs and their several tenants and sharecroppers in the respective cotton crops covered by such contracts.
6. Defendant paid to plaintiffs as producers under contract No. 2000, findings 1 and 2, and as lienholders under the contracts referred to in finding 3, in part as cash payments and in part as settlement of plaintiffs’ option to purchase cotton under such contract, the following amounts on the following respective dates:

*718 All these amounts were paid to plaintiffs for their own benefit and account, and for the benefit and account of plaintiff’s tenants and sharecroppers in the proportions referred to in finding 5 above, which amounts were in accordance with the express provisions of the contract to be divided by plaintiffs with their sharecroppers and tenants according to their respective interests therein. Plaintiffs failed, however, to divide any of these amounts between themselves and their tenants and sharecroppers in such proportions, and wrongfully and unlawfully retained for their own use and benefit a total amount of $23,009.69 which defendant had paid plaintiffs for the benefit and account of plaintiffs’ tenants and sharecroppers.
7. On April 9, 1941, the Acting Secretary of Agriculture, after an investigation of the matter, made a determination pursuant to the provisions of the act of May 12, 1933, and of the act of February 29, 1936 (49 Stat. 1148; Tit. 16 U. S. C., sec. 590n) and the contracts, that the facts with reference to plaintiffs’ failure to make payments to their tenants and sharecroppers of the amounts paid by defendant under said contracts, in said proportions, were those set forth in findings 1 through 6, above, and also determined that plaintiffs should be required to refund to defendant the amounts plaintiffs had received and so failed to pay to their tenants and sharecroppers. Subsequently defendant paid to plaintiffs’ tenants and sharecroppers the amount of $23,009.69 which plaintiffs had wrongfully and in violation of the agreement with defendant failed to pay to them.
II
1934 COTTON ACREAGE REDUCTION PROGRAM
($11,262.19 overpaid plaintiffs in Victoria and Wilson areas)
8. Under the act of May 12, 1933, defendant, acting through the Agricultural Adjustment Administration, promulgated a program for the voluntary reduction of acreage planted to cotton during 1934 for the purpose of reestablishing the purchasing power of farm commodities through the adjustment of the supply of cotton to con *719 sumptive requirements. Pursuant to this act, plaintiffs entered into the following contracts with defendant, entitled “1934 and 1935 Cotton Acreage Reduction Contract”, four of which covered certain lands, therein described, owned by-plaintiffs and located in what was commonly referred to as the “Victoria area” three of which covered certain lands therein described, owned by plaintiffs, and located in what was commonly referred to as the “Wilson area”, all in Mississippi County, Arkansas:

Under the terms of each contract, plaintiffs agreed to reduce the acreage to be planted to cotton in 1934 on the land covered by the contract by not less than 35 percent and not more than 45 percent below the “base acreage” established for such land, which was, by the terms of each contract, to be computed by dividing the total number of acres planted to cotton on such land during the years 1928 through 1932, by the number of years in this period in which cotton was planted on such land, and also agreed to rent to the Secretary of Agriculture for 1934 a stated number of acres of cotton land, stated to be equal to 40 percent of the base acreage for the land covered by the contract.
9. Under the terms of each contract defendant agreed to pay plaintiffs rent for each of the acres thereby rented to the Secretary of Agriculture at the rate of Sy2 cents per pound on the average yield of lint cotton per acre for the land in the years 1928 through 1932, inclusive, in two equal installments, plus a parity payment of not less than one cent per pound upon the farm allotment, which was to be computed, under the terms of the contract, as an amount equal to 40 percent of the number of pounds obtained by multiplying the annual average number of acres planted in cotton on the land during the years 1928 through 1932, by the average yield in pounds per acre during such years.
*720 10. These contracts were, by their terms, subject to such regulations or administrative rulings as were then or might thereafter be made or prescribed by the Secretary of Agriculture pertaining thereto, and provided that any violation of such terms, regulations, rulings, or any material misstatement therein or in any information furnished by plaintiffs should be grounds for cancellation of the contracts, in which event plaintiffs would repay to defendant any sums theretofore paid to them, and further provided that the determination of the Secretary of Agriculture that any such violation or misstatement had occurred should be final and conclusive.
11. As a basis for determining the number of acres rented to defendant, the farm allotment for the land, and the amount of payments due thereunder, plaintiffs made representations in each contract as to the cotton acreage and production history of the land for each of the years 1928 through 1982, in terms of bales produced, average weight of lint per bale, total lint produced, acreage planted to cotton and yield of lint per acre. In each contract the representations made by plaintiffs were wholly false and were known by plaintiffs to be false when made by them.
12. The County Committee of Mississippi County, Arkansas, in which county all the lands were located, was required to establish a base acreage and farm allotment for the land covered by each contract, pursuant to the provisions of the act of May 12, 1933, of administrative rulings promulgated thereunder on November 29, 1933, by the Agricultural Adjustment Administration with the approval of the Secretary of Agriculture, and of each contract. This county committee was misled by the representations of plaintiffs, and was erroneously and mistakenly assigned a base acreage and farm allotment for the land covered by each contract which was computed from the false representations as to acreage and production made by plaintiffs in each contract and which was not in accordance with the provisions of the act and administrative rulings.
13. On the basis of the base acreage and the farm allotment so erroneously and mistakenly established under each *721 contract, defendant erroneously and mistakenly paid to plaintiffs the following amounts on the following respective dates:

14. On April 9,1941, the Acting Secretary of Agriculture, after an investigation of the matter, made a determination pursuant to the provisions of the act of May 12,1933 of said contracts, of the act of February 29, 1936 (49 Stat. 1148; Tit. 16 U. S. C., sec. 590n), and of the act of February 11, 1936 (49 Stat. 1116,1117), as amended by the act of June 25, 1936 (49 Stat. 1925), that the facts with reference to the execution of these contracts and the making therein of the false representations by plaintiffs were those set forth in findings 8 through 13, above, and further determined that rather .than canceling the contracts in their entirety and *722 requiring plaintiffs to repay the total amounts paid thereunder by defendant, the amount of rental and parity payments properly payable by defendant to plaintiffs should be computed on the basis of the aggregate cotton acreage and production figures for (1) all of plaintiffs’ land covered by the four contracts in the Victoria area considered as a unit, and (2) all of plaintiffs’ land covered by the three contracts in the Wilson Area considered as a unit; that is, that the land in the Victoria area should be treated as if covered by a single “1984 and 1935 Cotton Acreage Reduction Contract” in lieu of said four contracts, and the land in the Wilson area should be treated as if covered by a single such contract in lieu of' the three contracts; and that plaintiffs should be required to repay to defendant the difference between the total amount theretofore paid to them under the seven contracts and the amount properly payable to them as so computed upon the true state of facts.
15. The total amount theretofore paid by defendant to plaintiffs under the four contracts covering the Victoria area was $24,973.76, whereas the total amount properly payable under those contracts as so computed was $11,904.88, a difference of $13,068.88.
16. The total amount theretofore paid by defendant to plaintiffs under the three contracts covering the Wilson area was $52,313.04, whereas the total amount properly payable under those contracts as so computed was $54,119.73, a difference of $1,806.69 in plaintiffs’ favor. The net amount overpaid by defendant to plaintiffs under all seven contracts as so computed was, therefore, $11,262.19.
Ill
1934 COTTON ACREAGE REDUCTION PROGRAM
($542.67 improperly withheld from tenants)
17. Pursuant to the act of 1933 and the program referred to in finding 8, above, plaintiffs, in 1934, entered into (in addition to the seven contracts covering the Victoria and Wilson areas referred to in finding 8) two contracts with defendant entitled “1934 and 1935 Cotton Acreage Reduc *723 tion Contract,” one of which, bearing No. 71-047-1196 and dated January 29, 1934, covered certain land therein described, owned by plaintiffs, and located in what was commonly referred to as the “Armorel area,” and the other of which, bearing No. 71-047-916 and undated, covered certain land therein described, owned by plaintiffs, and located in what was commonly referred to as the “Lepanto area,” all in Mississippi County, Arkansas. These contracts covering the Armorel and Lepanto areas, respectively, contained the provisions referred to in findings 8 through 10, above.
18. Under the terms of all nine contracts executed by plaintiffs and defendant under the 1934 cotton acreage reduction program, plaintiffs were obligated to pay to each share tenant and sharecropper producing cotton on the land covered by each and all the contracts a share of the parity payment made by defendant proportionate to each share tenant’s or sharecropper’s interest in the cotton produced in 1934 on the land covered by the applicable contract, and the contracts further provided that in the event plaintiffs should fail or refuse to make such payments to any share tenant or sharecropper, plaintiffs thereby agreed to forfeit and pay to the Secretary of Agriculture twice the amount which plaintiffs should fail to pay.
19. Defendant paid to plaintiffs under the four contracts covering the Victoria area and under the three contracts covering the Wilson area the parity payments set forth in finding 13. Defendant also paid to plaintiffs under the contracts covering the Armorel and Lepanto areas, respectively, parity payments in the following amounts on the following respective dates:

The parity payments under all nine contracts were paid to plaintiffs for their own benefit and account and for the benefit and account of plaintiffs’ share tenants and sharecroppers in the same proportions as the ratio of the interests *724 of plaintiffs and of their several share tenants and sharecroppers in the respective cotton crops covered by the contracts. Plaintiffs failed, however, to divide these amounts between themselves and their share tenants and sharecroppers, as they had expressly agreed to do, in such proportions, and wrongfully, unlawfully, and in violation of their agreements, retained for their own use and benefit a total amount of $542.67 which defendant had paid plaintiffs for the benefit and account of plaintiffs’ share tenants and sharecroppers.
20. On April 9,1941, the Acting Secretary of Agriculture, after an investigation, made a determination pursuant to the provisions of said'act of May 12, 1938, and of the contracts, and of the act of February 29, 1936 and of the act of February 11, 1936, as amended by the act of June 25, 1936, that the facts with reference to plaintiffs’ failure to make payments to their share tenants and sharecroppers of the amounts paid by defendant under the contracts in the proportions referred to in findings 18 and 19 were those stated in findings 17 through 19, and also determined that, rather than requiring plaintiffs to forfeit twice the amount which they had so failed to pay to their share tenants and sharecroppers, plaintiffs should be required to refund to defendant only the total amount which plaintiffs had failed to pay to their share tenants and sharecroppers. Subsequently defendant paid to plaintiffs’ tenants and sharecroppers the amount of $542.67 which plaintiffs had wrongfully, and in violation of their agreements, failed to pay them.
IV
1935 COTTON ACREAGE ADJUSTMENT PLAN
($12,715.32 overpaid plaintiffs in Victoria and Wilson areas)
21. Under the act of May 12, 1933, defendant, acting through the Agricultural Adjustment Administration, promulgated a program for the voluntary adjustment of acreage planted to cotton during 1935 for the purpose of reestablishing the purchasing power of farm commodities through the adjustment of the supply of cotton to consumptive requirements. Pursuant to that act, and proclamation made by the Secretary of Agriculture on November 28, 1934, “Adminis *725 trative Eulings Applicable for 1985 to the 1934 and 1935 Cotton Acreage Adjustment Plan,” the following contracts entered into between plaintiffs and defendant under the 1934 cotton acreage reduction program (referred to in finding 8,) were, by their terms, and by the administrative rulings, in February 1935, made applicable to the 1935 program:

22. With respect to each of these contracts, plaintiffs and defendant entered into supplementary contracts, each dated March 25, 1935, entitled “1935 Supplementary Document Eelating to 1934 and 1935 Cotton Acreage Seduction Contract entered into in 1934,” and bearing the same number as the contract which it supplemented. Under the terms of each contract as supplemented plaintiffs agreed to reduce the acreage to be planted to cotton in 1935 on the land covered by the contract by 35 percent of the “base acreage” established for the land under the 1934 program in the manner set forth in finding 8, and also agreed to rent to the Secretary for 1935 a stated number of acres of cotton land, stated to be equal to 35 percent of the base acreage for the land covered by the contract.
23. Under the terms of each contract as supplemented defendant agreed to pay plaintiffs a rental payment on each of the acres thereby rented to the Secretary for 1935 at the rate of 314 cents per pound on the average yield of lint cotton' per acre for the land in such of the years 1928 through 1932, as the lands had been planted to cotton, in two equal installments, plus a parity payment of not less than 1*4 cents per pound on the farm allotment established for the land under the 1934 program in the manner set forth in finding 9.
24. The County Committee of Mississippi County, Arkansas, in which county all the lands were located, erroneously and mistakenly, .in reliance upon plaintiffs’ representations, assigned the same base acreage and farm allotment for the lands covered by each contract as were assigned to them *726 under the 1934 program, which base acreages and farm allotments were, as set forth in findings 11 and 12, computed from the false representations made by plaintiffs as to the acreage and production history of the lands, and which were not in accordance with the provisions of said act, administrative rulings, and contracts.
25. On the basis of the base acreage and the farm allotment so erroneously and mistakenly established under each contract, defendant erroneously and mistakenly paid to plaintiffs the following amounts on the following respective dates:

26. In addition to the three contracts covering lands in the Victoria area under the 1935 program referred to in findings 21 and 22, plaintiffs and defendant also entered into, under the 1935 program, a contract entitled “1934 and 1935 Cotton Acreage Keduction Contract as entered into in 1935,” dated June 4,1935, and bearing No. 71-047-9001, which covered certain land therein described, owned by plaintiffs, and located in the Victoria area, and which constituted part only of plaintiffs’ lands covered under the 1934 program by contract No. 71-047-402. In Contract No. 71-047-9001 plaintiffs made representations as to the adjusted average production of lint cotton, adjusted average acreage planted to cotton, and adjusted average yield of lint cotton per acre of the land covered by said contract which were wholly false and which were computed from the false representations *727 made by plaintiffs in Contract No. 71-047-402 under the 1934 program, as set forth in finding 11.
27. Under the terms of Contract No. 71-047-9001 plaintiffs agreed to reduce the acreage to be planted to cotton in 1935 on the land covered by the contract by 35 percent of the “base acreage” established for said land (which was the adjusted average acreage planted to cotton) and also agreed to rent to the Secretary for 1935 a stated number of acres of cotton land, stated to be equal to 35 percent of the base acreage for the land covered by the contract.
28. Under the terms of Contract No. 71-047-9001 defendant agreed to pay plaintiffs a rental payment on each of the acres thereby rented to the Secretary for 1935 at the rate of 3y2 cents per pound on the average yield of lint cotton per aeree for the land, in two equal installments, plus a parity payment of not less than 1% cents per pound on the farm allotment established for said lands (which was 40 percent of said adjusted average production of lint cotton). By its terms, the contract was subject to and contained the provisions set forth in finding 10.
29. The County Committee of Mississippi County, Arkansas, assigned to the land an erroneous and mistaken base acreage and farm allotment, which base acreage and farm allotment were, as set forth in findings 26 through 28, computed from the false representations made by plaintiffs both in Contract No. 71-047-402 and in Contract No. 71-047-9001 as to the acreage and production history of the land, and which were not in accordance with the provisions of the act of 1933, the administrative rulings and the contract.
30. On the basis of the base acreage and the farm allotment so erroneously and mistakenly established under Contract No. 71-047-9001 defendant erroneously and mistakenly paid to plaintiffs the following amounts on the following-respective dates:

*728 31. On April 9,1941, the Acting Secretary of Agriculture, after an investigation, made a determination pursuant to the provisions of the act of May 12, 1933, the provisions of the contracts, the act of February 29, 1936, and of the act of February 11, 1936, as amended by the act of June 25, 1936, that the facts with reference to the execution of the contracts and the making therein of such false representations by plaintiffs were those set forth in findings 21 through 30, and further determined that rather than cancelling Contracts Nos. 71-047-386, 71-047-523, 71-047-619, and 71-047-9001 in their entirety and requiring plaintiffs to repay the total amounts paid thereunder by defendant, the amount of rental and parity payments properly payable by defendant to plaintiffs should be computed on the basis of the aggregate cotton acreage and production figures for all of plaintiffs’ land covered by the four contracts in the Victoria area considered as a unit; that is, that the land in the Victoria area should be treated as if covered by a single “1934 and 1935 Cotton Acreage Reduction Contract” in lieu of the four contracts; and that plaintiffs should be required to repay to defendant the difference between the total amount theretofore paid to them under the four contracts and the amount properly payable to them as so computed.
32. The total amount theretofore paid by defendant to plaintiffs under the four contracts covering the Victoria area was $23,537.39, whereas the total amount properly payable under such contracts as so computed was $11,029.22, a difference of $12,508.17.
33. Under the act and administrative rulings referred to in findings 12 and 21, Contract No. 71-047-415 entered into between plaintiffs and defendant under the 1934 cotton acreage reduction program (referred to in finding 8) was by its terms and by the administrative rulings also applicable to the 1935 program. Under the 1935 program plaintiffs and defendant entered into a contract entitled “1934 and 1935 Cotton Acreage Reduction Contract as entered into in 1935,” No. 71-047-9003, which covered certain land therein described, owned by plaintiffs, and located in the Wilson area, and which was intended to supersede Contract No. 71-047-415. However, Contract No. 71-047-9003 by mistake *729 failed to cover by its terms certain of plaintiffs’ land in the Wilson area which was covered by Contract No. 71-047-415, and which was not eliminated from the scope of Contract No. 71-047-415 in the manner prescribed by the administrative rulings. This land was operated in 1935 by W. H. Amos and A. J. Young as tenants of plaintiffs, and they produced thereon 66.23 acres of cotton. The base acreage under Contract No. 71-047-9003 was 6,273 acres, of which 35 percent, or 2,195 acres, was stated to be rented to the Secretary of Agriculture. The acreage actually planted to cotton by plaintiffs under the contract was 4,029.74, which acreage, plus the 66.23 acres planted by W. H. Amos and A. J. Young, gave a total planted acreage under the contract of 4,095.97. This exceeded by 18.97 acres the 65 percent of the base acreage which the contract permitted plaintiffs to plant to cotton so that the actual acreage rented to the Secretary of Agriculture was 2,177.03 instead of the stated acreage of 2,195.
34. Contract No. 71-047-9003 contained the provisions set forth in findings 10 and 28. Defendant erroneously and mistakenly paid plaintiffs under this contract a total rental payment of $23,980.32 in two equal installments on September 11, 1935, and March 19, 1936, computed at the contract rate of 3% cents per pound on the average yield of lint cotton per acre, for each acre stated to be so rented, whereas the correct amount of the rental payment computed at the contract rate on the acreage actually rented was $23,773.17, a difference of $207.15.
35. On April 9,1941, the Acting Secretary of Agriculture, after an investigation, made a determination pursuant to the provisions of the act of May 12, 1933, of the contract, and of the act of February 29, 1936, and of the act of February 11, 1936, as amended by the act of June 25, 1936, that the facts with reference to defendant’s overpayment of rent under the contract were those set forth in findings 33 and 34, and further determined that rather than canceling Contract No. 71-047-9003 in its entirety, as he might have done, and requiring plaintiffs to repay the total amounts paid thereunder by defendant, plaintiffs should be required to repay to defendant only the difference between the rental payment *730 erroneously made under the contract and the correct amount of rental payment.
V
1935 COTTON ACREAGE ADJUSTMENT PLAN
($5,932.93 Improperly withheld from tenants)
36. In addition to Contracts Nos. 71-017-386, 71-047-523, 71-047-619, 71-047-9001 and 71-047-9003 (referred to in findings 21, 26, and 33), under the 1935 program plaintiffs and defendant also executed a contract entitled “1934 and 1935 Cotton Acreage Reduction Contract as entered into in 1935,” dated March 15, 1935, No. 71-080-9029, covering certain land therein described, owned by plaintiffs, and located in the Armorel area.
All six of these contracts contained the provisions referred to in findings 10,18,22, and 23.
37. Under the terms of all six contracts and under the administrative rulings referred to in findings 12 and 21, plaintiffs were obligated to pay to each cash tenant producing cotton on land rented from plaintiffs and covered by the applicable contract a share of the rental payments made by defendant proportionate to the ratio of the number of acres covered by the contract planted to cotton by plaintiffs to the number of acres planted to cotton by such cash tenant.
38. Defendant paid to plaintiffs under Contracts Nos. 71-047-386, 71-047-523, and 71-047-619 the rental and parity payments set forth in finding 25; under Contract No. 71-047-9001 the rental and parity payments set forth in finding 30; under Contract No. 71-047-9003 the rental payment set forth in finding 34, plus a parity payment of $9,785.84; and under Contract No. 71-080-9029 a rental payment of $17,334.20 in two equal installments on December 9, 1935, and August 5, 1936, plus a parity payment of $7,076.92.
39. All the parity payments were made to plaintiffs for their own benefit and account and for the benefit and account of plaintiffs’ tenants and sharecroppers in the same proportions as the ratio of the interests of plaintiffs and *731 of tlieir several tenants and sharecroppers in the respective cotton crops covered by the contracts. All the rental payments were paid to plaintiifs for their own benefit and account and for the benefit and account of plaintiffs’ cash tenants in the same proportions as the ratios of the number of acres covered by the contract planted to cotton by plaintiffs and of the number of acres planted to cotton by plaintiffs’ several cash tenants. Plaintiffs failed, however, to divide the parity payments between themselves and their tenants and sharecroppers in the proportions referred to above, and failed to divide the rental payments between themselves and their cash tenants in the proportions referred to above, and wrongfully, unlawfully, and in violation of their agreements, retained for their own use and benefit a total amount of $5,932.93, which defendant had paid plaintiffs for the benefit and account of plaintiffs’ tenants and sharecroppers.
40. On April 9,1941, the Acting Secretary of Agriculture, after an investigation, made a determination pursuant to the provisions of the act of May 12, 1933, of the contracts, and of the act of February 29, 1936, and of the act of February 11, 1936, as amended by the act of June 25, 1936, that the facts with reference to plaintiffs’ failure to make payments to their tenants and sharecroppers of the amounts paid by defendant under the contracts in the proportions referred to above, were those set forth in findings 36 through 39, and further determined that rather than can-celling Contracts Nos. 71-047- 386, 71-047-523, 71-047-619, 71-047-9001, 71-047 — 9003, and 71-080-9029 in their entirety and requiring plaintiffs to repay the total amounts paid thereunder by defendant, and rather than requiring plaintiffs to forfeit twice the amount of parity payments which they had so failed to pay to their tenants and sharecroppers, plaintiffs should be required to refund to defendant only the total amount which plaintiffs had so failed to pay to their tenants and sharecroppers. Subsequently defendant paid to plaintiffs’ tenants and sharecroppers the amount due them of $5,932.93 which plaintiffs had wrongfully failed to pay to them.
*732 VI
1936 AGRICULTURAL CONSERVATION PROGRAM
($19,014.19 overpaid plaintiffs in Victoria and Wilson areas)
41. Under the Soil Conservation and Domestic Allotment Act, approved February 29, 1936 (49 Stat. 1148; Tit. 16 U. S. C., secs. 590g to 590q), defendant, acting through the Agricultural Adjustment Administration, promulgated a program for soil restoration, soil conservation, and the prevention of erosion for the purpose of preserving and improving soil fertility, promoting the economic use and conservation of land, diminishing the exploitation and wasteful and unscientific use of national soil resources, and reestablishing the purchasing power of persons on farms through the making of grants to agricultural producers, including tenants and sharecroppers, in connection with the effectu-ation of such purposes. Pursuant to this act, the Secretary of Agriculture, on April 15, 1936, promulgated administrative regulations entitled “1936 Agricultural Conservation Program — Southern Region — Bulletin No. 1, Revised,” and thereafter from time to time promulgated amendments and supplements to the regulations, which, as so amended and supplemented, are codified in “1936 Agricultural Conservation Program — Southern Region — Bulletin No. 1, Revised as of September 1, 1936”. These regulations provided that grants would be made in accordance with their provisions and such other provisions as might thereafter be made; that payments would be made for each acre diverted in 1936 from the cotton soil-depleting base and from which in 1936 no soil-depleting crop should be harvested; that the cotton soil-depleting base for a farm should be the acreage of cotton harvested on that farm in 1935, subject to certain adjustments therein stated; that payment would be made at the rate of five cents for each pound of the normal yield per acre of cotton for the farm for each acre so diverted, subject to certain adjustments therein stated; and that all or any part of any payment which otherwise would be made with respect to any farm might be withheld if any prac *733 tices should be adopted which the Secretary of Agriculture should determine might tend to defeat the purposes of said program.
42. Plaintiffs, in order to defeat the purposes of this program as applied to the lands owned by plaintiffs in the Victoria and Wilson areas and still obtain maximum grants from defendant under this program, leased to tenants under plaintiffs’ control and direction, some of whom actually farmed as agents and employees of plaintiffs rather than as bona -fide tenants, in 1986 the lands ostensibly leased to them, those parts of the lands owned by plaintiffs in the Victoria and Wilson areas which were entitled to receive comparatively small cotton soil-depleting bases, so that such tenants would (and they actually did) plant on the lands leased to them cotton acreages greatly in excess of the cotton soil-depleting bases; whereas on the balance of the lands owned by plaintiffs in the Victoria and Wilson areas, which was entitled to receive comparatively large cotton soil-depleting bases, large acreages would be diverted from the cotton soil-depleting bases.
43. In order to obtain grants under the program, plaintiffs executed and filed with defendant an application for payment (Form SE-9) dated April 10,1937, No. 71-047-963, covering lands in the Victoria area which they owned and operated, and executed and filed with defendant a similar application for payment dated March 18,1937, No. 71-047-1053, covering lands in the Wilson area which they owned and operated.
In their applications, plaintiffs failed to list in the blanks provided for such purpose certain other farms which they actually owned and operated in the Victoria and Wilson areas, respectively, and plaintiffs thereby falsely represented in their applications that they listed all other farms located in Mississippi County, Arkansas, in respect to which plaintiffs had an interest as owners in the crops (or the proceeds thereof) produced thereon.
44. July 16, 1937, defendant paid to plaintiffs $13,050.54 as a grant for their participation in the 1936 Agricultural Conservation Program with respect to the lands in the Victoria area, and on August 13, 1937, also paid to plaintiffs $28,479.51 as a grant for their participation in such program *734 with respect to lands in the Wilson area. These grants were paid by defendant by mistake and without knowledge of the false representations which plaintiffs had made in their applications for payment, and without knowledge of the scheme referred to in finding 42, which plaintiffs had entered into and cai'ried out to defeat the purposes of the program and still obtain maximum grants from defendant thereunder.
45. On April 9, 1941, the Acting Secretary of Agriculture, after an investigation, made a determination pursuant to the provisions of the act of February 29,1936, that certain of the ostensible cash tenants operating lands of plaintiffs in the Victoria area were not tona fide tenants of plaintiffs but were actually employees of plaintiffs operating the lands on plaintiffs’ behalf, and further determined that rather than revoking the grants in their entirety and requiring plaintiffs to repay the total amount thereof, the amount of such grants properly payable by defendant to plaintiffs should be computed on the basis of the aggregate cotton acreage diverted in 1936 from cotton soil-depleting bases for (1) all lands in the Victoria area owned, operated, or controlled by plaintiffs, considered as a unit; and (2) all lands in the Wilson area owned, operated, or controlled by plaintiffs, considered as a unit; and that plaintiffs should be required to repay to defendant the difference between the total amount of the grants theretofore paid to them under the 1936 program and the amounts properly payable to them as so computed.
46. The total cotton soil-depleting bases for all lands in the Victoria area owned, operated, or controlled by plaintiffs was 6,124.9 acres. The total area of all such lands planted to cotton in 1936 was 5,906.6 acres. The total number of acres diverted from the cotton base for said lands was 218.3 acres. Defendant had, however, paid to plaintiffs and their actual or ostensible cash tenants grants computed on a total diversion of 991.6 acres, so that the area of such lands for which grants were excessively and improperly paid to plaintiffs amounted to 773.3 acres. The total amount of the grants erroneously and improperly paid to plaintiffs with respect to the lands owned and operated by them in the Victoria area was $10,942.19.
*735 47. The total cotton soil-depleting bases for all lands in the Wilson area owned, operated, or controlled by plaintiffs was 13,838.5 acres. The total area of all such lands planted to cotton in 1936 was 10,732.5 acres. The total number of acres diverted from the cotton base for such lands was 3,106 acres. Defendant had, however, paid to plaintiffs and their actual or ostensible cash tenants grants computed on a total diversion of 3,606.7 acres, so that the area of such lands for which said grants were excessively and improperly paid to plaintiffs amounted to 500.7 acres. The total amount of the grants erroneously and improperly paid to plaintiffs with respect to the lands owned and operated by them in the Wilson area was $8,072. The total amount erroneously and improperly paid by defendant to plaintiffs with respect to both the Victoria and Wilson areas as so computed was, therefore, $19,014.19.
VII
1936 AGRICULTURAL CONSERVATION PROGRAM
($1,958.39 improperly paid plaintiffs instead of their tenants)
48. Under the 1936 program, in the Applications for Payment (referred to in finding 43) which plaintiffs executed and filed with defendant covering lands which they owned and operated in the Victoria and Wilson areas, plaintiffs failed to list in the blanks provided for such purpose the names of certain cash tenants and sharecroppers who produced cotton on the lands covered by such applications; and with respect to certain cash tenants who were listed in such applications, plaintiffs understated the acreages which represented the proportionate share of such cash tenants in the cotton grown on the lands covered by such applications and correspondingly overstated the acreage which represented plaintiffs’ proportionate share in such cotton. Plaintiffs thereby falsely represented in these applications that they had listed the names and addresses of all person's who were entitled to share in the cotton produced on the lands and that they had correctly listed the acreages which represented the proportionate shares in the cotton to which such persons were entitled.
*736 49. Under the 1936 Agricultural Conservation Program and the regulations applicable thereto plaintiffs were not entitled to receive any grants with respect to acreages diverted from cotton on lands owned by them but operated by cash tenants.
50. The grants which defendant paid to plaintiffs for their participation in the program with respect to the lands in the Victoria and Wilson areas were paid by defendant under a mistake and without knowledge of the false representations which plaintiffs had made in their applications, and mistakenly included certain amounts which were properly payable to plaintiffs’ cash tenants and their sharecroppers rather than to plaintiffs.
51. On April 9,1941, the Acting Secretary of Agriculture, after an investigation, made a determination pursuant to the provisions of the act of February 29, 1936, that the facts with reference to plaintiffs’ false representations in their applications and the mistaken payments by defendant of the grants were those set forth in findings 48 to 50, and further determined that plaintiffs should be required to repay to defendant such parts of such grants as were so mistakenly and improperly paid to them on this account.
52. The total amount of such erroneous and improper grant paid to plaintiffs with respect to the lands owned or operated by them in the Victoria area on this account was $156.51, and the total amount of such erroneous and improper grant paid to plaintiff's with respect to the lands owned or operated by them in the Wilson area on this account was $1,801.88. The total amount erroneously and improperly paid by defendant with respect to both the Victoria and Wilson areas on this account was, therefore, $1,958.39.
53. Plaintiffs have failed and refused to repay to defendant any part of the amounts which they wrongfully received from defendant as set forth above and defendant has set off these amounts against the claim of $77,613.46 set forth in plaintiffs’ petition.
[The court decided that defendant’s plea of set-off stated a sufficient cause of action and plaintiff’s demurrer was overruled.]
*737 Plaintiffs’ demurrer to defendant’s plea of set-off is based upon the grounds that the plea fails to state a cause of action for set-off as to any one of the seven items; that it fails to show any authority in law for the findings and determinations made by the Secretary of Agriculture on April 9,1941; that it fails to show that defendant suffered any loss, injury, or damage by reason of the facts alleged; that it fails to allege fraud or misrepresentations with definiteness and certainty, and that it fails to allege any intent on the part of plaintiffs to defraud or injure defendant.
We think that under the facts alleged and hereinbefore set forth the plaintiffs’ demurrer is not well taken.
The petition seeks to recover $77,613.46 under plaintiffs’ alleged compliance with the soil conservation program for 1938 and regulations made pursuant to the Soil Conservation and Domestic Allotment Act of February 29, 1936. The merits of this claim of plaintiffs are not now in issue. Before any payment in connection with the amount due plaintiffs under the 1938 program, pursuant to the 1936 act, had been made, the defendant, acting through the Secretary of Agriculture, determined, after an investigation, that in connection with certain transactions and agreements with plaintiffs concerning matters similar in character which arose under and grew out of contracts and agreements with plaintiffs under the Agricultural Adjustment Act of May 12,1933, and subsequent acts, plaintiffs had violated their express agreements with defendant; had wrongfully and unlawfully retained for their own use, in breach of their express promises, large sums of money paid to them by defendant for the use and benefit of others; had made false and fraudulent representations to defendant, upon which it relied, and thereby obtained large sums to which they were not entitled under the agreements. As a result of his findings the Secretary determined that plaintiffs had wrongfully, and through a breach of trust, retained and used certain sums which did not belong to them and which they had expressly agreed to pay and deliver to others as sharecroppers and tenants, and that as a result of plaintiffs’ false and fraudulent representations they had been overpaid certain sums, all of which amounted *738 to $74,435.88. Accordingly this amount (plus another item of $590.64 not now in issue) was offset against the amount of $77,613.46, then determined to be due plaintiffs under the 1938 program pursuant to the Soil Conservation Act of 1936 and the regulations, and a check for the balance of $2,587.44 was issued and mailed to plaintiffs. Plaintiffs refused to accept the check as payment and have not cashed it.
Defendant’s plea alleges a cause of action for set-off with sufficient definiteness and certainty in that it specifically alleges and sets forth the acts of plaintiffs on which the charges of breach of trust and of their agreements, are based; it sets forth, as exhibits, the pertinent portions of plaintiffs’ express agreements, all of which allegations show that the Secretary of Agriculture had authority to make the determination of April 9,1941.
The principal contention of plaintiffs is that defendant cannot recover any portion of the amounts paid to them for 1933, 1934, and 1935 because under the decision in United States v. Butler, 297 U. S. 1, the Agricultural Adjustment Act of May 12, 1933, the regulations, and the contracts, of which this act and regulations were a part, are not binding on them. Defendant is not seeking to recover by way of offset any amount to which plaintiffs were entitled under the arrangements and agreements between them and the Government under the act of May 12,1933, and the regulations. It is only seeking to recover by way of offset those amounts to which plaintiffs were not entitled because of their misappropriation of certain sums, which defendant has made good, and the sums which plaintiffs obtained because of their false and fraudulent representations. The plea of set-off is based upon acts of plaintiffs which amount to fraud against the Government and their sharecroppers and tenants. In these circumstances we think the defendant may lawfully recover these sums by way of offset notwithstanding the decision in United States v. Butler, supra. Moreover, plaintiffs received and accepted more than $200,000 from the Government under the 1933 act, the program, and the contracts mentioned in the findings, and they are estopped from asserting the unconstitutionality of the act and regulations as a defense to their unauthorized and fraudulent acts. They *739 may not retain tlie payments which they received under the completed contracts and disavow the obligations which they, by their agreements, imposed upon themselves. Booth Fisheries Company et al. v. Industrial Commission of Wisconsin, et al., 271 U. S. 208; Wall et al. v. Parrot Silver & Copper Company, et al., 244 U. S. 407; Great Falls Manufacturing Co. v. The Attorney General, 124 U. S. 581, 598; Daniels v. Tearney, 102 U. S. 415; St. Louis Malleable Casting Company v. George G. Prendergast Construction Co., 260 U. S. 469; Pierce Oil Corporation et al. v. Phoenix Refining Company, 259 U. S. 125; United States v. Kapp et al., 302 U. S. 214, 217.
Plaintiffs’ demurrer to defendant’s plea of set-off is therefore overruled. It is so ordered.
WhitakeR, Judge; and Whaley, Chief Justice, concur.
MaddeN, Judge; and JoNes, Judge, took no part in the decision of this case.